**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC and DUJUAN MCCOY,<br><br>    Plaintiffs,<br><br>    v.<br><br>AT&T SERVICES, INC., and DIRECTV, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:20-cv-02108-TWP-TAB<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on two Motions to Dismiss filed by Defendants AT&T

Services, Inc. ("AT&T") and DIRECTV, LLC ("DIRECTV") (collectively, "Defendants"), one

filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 55), and one filed pursuant

to Indiana's Strategic Lawsuit Against Public Participation (the "anti-SLAPP statute"), Indiana

Code § 34-7-7-5, -9 (Filing No. 57).   In their Amended Complaint, Plaintiffs Circle City

Broadcasting I, LLC ("Circle City") and Dujuan McCoy ("McCoy") (collectively, "Plaintiffs"),

allege the Defendants engaged in unlawful race discrimination in contracting and made false and

defamatory statements by characterizing Plaintiffs' race discrimination claim as a "negotiating

tactic." (Filing No. 49.)  Also pending is Plaintiffs' Motion for Leave to File Surreply in Opposition

to Defendants' Motion to Dismiss. (Filing No. 73.) For the following reasons, the Court **denies**

leave to file the surreply, **grants in part and denies in part** the Motion to Dismiss pursuant to

Rule 12(b)(6), and **denies** the Motion to Dismiss under Indiana's anti-SLAPP statute.

## I.  BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a

motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Plaintiffs as the non-moving party.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Circle City is a minority-owned, local television broadcasting company with television stations located in and serving Indianapolis, Indiana, and the surrounding areas.  (Filing No. 49 at ¶ 12.)  McCoy--Circle City's majority owner who serves as the President and Chief Executive Officer of Circle City--is Black.  *Id.* at ¶ 13.  On September 19, 2019, Circle City purchased WISH-TV and WNDY from Nexstar Broadcasting, Inc. ("Nexstar").  *Id.* at ¶ 18.  Prior to Circle City's purchase of these two stations, Nexstar had been receiving full market price in retransmission payments from AT&T.  *Id.* at ¶ 19.  On the date the stations were purchased by Circle City, AT&T halted all retransmission payments.  *Id.*

During the fall of 2019, when the two television stations were being transferred from Nexstar to Circle City, the transition in ownership, management, and programming experienced no issues.  *Id.* at ¶ 20.  As Circle City took over, it continued offering the same content and quality of television programming that Nexstar had been offering.  *Id.*  After it took over, Circle City made several improvements to both stations, including more local news coverage, coverage of local high school sports, increased multi-cultural reporting and representation, and the addition of a medical report.  *Id.*

During the transition, Circle City was able to secure long-term deals with all but three television distributors: the Defendants and one other company.  *Id.* at ¶ 22. Defendants refused to negotiate retransmission contracts with Circle City.  *Id.* at ¶ 21. To understand Defendants' refusal to negotiate, McCoy emailed Randall Stephenson, the Chairman and Chief Executive Officer of AT&T Inc. at the time.  *Id.* at ¶ 5.  On June 23, 2020, McCoy received a response from DIRECTV's executive vice president and Chief Content Officer at the time, Rob Thun ("Thun").  *Id.*  Thun

stated that it was AT&T's "policy to not pay license fees for standalone non-Big 4 broadcast stations" and further stated "it does not make sense for us ultimately to charge consumers for standalone non Big-4 stations." *Id.* Circle City alleges that this is a clear falsehood given that when Nexstar owned the stations, it did not own other stations in the Indianapolis market, meaning it was a standalone non-Big 4 station, but still received retransmission fees. *Id.* Circle City also alleges that, based on comments from Defendants' employees, Defendants "maintain an internal playbook designed to suppress minority-based content." *Id.* at ¶ 7.

Due to the treatment it received from Defendants, Circle City filed a Section 1981 lawsuit on August 10, 2020. *Id.* at ¶ 28. When asked to comment on the lawsuit, Defendants, through its lead public relations manager, Teresa Mask ("Mask"), issued a statement describing the lawsuit as a "negotiating tactic" which Circle City utilized "only after [] [AT&T] declined its demands for compensation above and beyond what similar independent stations receive." *Id.* at ¶ 29. Defendants also stated that AT&T "'recently completed more extensive agreements with other minority-owned broadcasters including one who recently paid Circle City's owner $165 million to acquire his former stations.'" *Id.* at ¶ 30.

After Defendants provided their statement, Plaintiffs sued AT&T in Indiana state court, asserting that AT&T's statement was "false and defamatory". *Id.* at ¶ 33. Plaintiffs alleged "defamation per quod, if not per se," and "general reputational damage and special economic damages." *Id.* at ¶¶ 38, 48. Defendants removed the state court action to federal court under 28 U.S.C. §§ 1332, 1441, and 1446. *See Circle City Broad. I, LLC, et al. v. AT&T Corp. d/b/a U-Verse & DIRECTV*, No. 1:20-cv-02320 (S.D. Ind.). This Court then consolidated Plaintiffs' defamation claim with the Section 1981 lawsuit. (Filing No. 30.)

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

Count I of the Amended Complaint alleges violation of 42 U.S.C. § 1981 against all Defendants and Count II alleges Defamation against AT&T. Defendants have filed two separate Motions to Dismiss: one filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 55), and one filed pursuant to Indiana's anti-SLAPP statute, Ind. Code § 34-7-7-5, -9 (Filing No. 57). As an initial matter, the Court will address Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (Filing No. 73), before turning to the merits of each motion to dismiss.

### A.   Plaintiffs' Motion for Leave to File Surreply

Plaintiffs allege that Defendants, for the first time in their reply brief, advanced the argument that a "defamation plaintiff must demonstrate actual malice on behalf of the *speaker*, not the speaker's employer or other agent[,]" and citing *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865 (7th Cir. 2018) for the first time. (Filing No. 73 at 2.) "The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief request by the motion." *Lady Di's Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09-cv-0340-SEB-DML, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010) (quotation omitted). But "new arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 4:14-cv-00063-RLY-TA, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (quotation omitted). Courts allow a surreply only in limited circumstances to address new arguments or evidence raised in the reply brief or objection to the admissibility of evidence cited in the response. *See, e.g., id.*

The Court has reviewed the parties' briefing, including Plaintiffs' proposed surreply brief. While Defendants did cite a new case in their reply brief, the argument presented was a direct reply to the argument made in Plaintiffs' response attempting to use their Section 1981 claim as support for their defamation claims. This is not a "new argument or evidence" and fails to meet the standard permitting a surreply. Plaintiffs' motion is **denied**.

**B.**    **Defendants' Rule 12(b)(6) Motion to Dismiss**

In its first Motion to Dismiss, Defendants contend the Plaintiffs have failed to state a claim for race discrimination under Section 1981 and for defamation.  The Court will address the claims and arguments in turn.

**1.**    **Section 1981 Claim**

Plaintiffs allege that the Defendants "refused and continue to refuse to contract in a non-discriminatory manner with Circle City as required by 42 U.S.C. § 1981". (Filing No. 49 at ¶ 1.) Section 1981 gives "[a]ll persons within the jurisdiction of the United States" the same right "to make and enforce contracts" without respect to race.  42 U.S.C. § 1981(a).  To state a claim under Section 1981, a plaintiff must allege "(1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). Further, in the context of a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Defendants argue that Circle City has failed to state a claim under Section 1981 "because its own allegations defeat any claim that its owner's race was the but-for cause of AT&T's decision not to contract with Circle City." (Filing No. 56 at 9.)  Defendants support this argument on two

bases. First, asserting the Supreme Court's reasoning in *Iqbal*, Defendants argue that the following

conclusory statements must be disregarded:

- "This case is a result of [AT&T] first refusing to negotiate a contract with Circle City because the stations in question are now owned by a Black man . . . ." (Filing No. 49 at ¶ 3.)

- "Based on comments made by employees of [AT&T], the Plaintiffs understand that [AT&T] maintain[s] an internal playbook designed to suppress minority-based content." *Id.* at ¶ 7.

- Other than these improvements, the only meaningful change was the fact that the stations were now majority owned by an African American, McCoy. Instead of being recognized and celebrated as a great American accomplishment and advancement for minorities when McCoy purchased the stations, [AT&T] viewed it as a downgrade. [AT&T] refused to negotiate the retransmission contracts in good faith with the minority-owned Circle City. *Id.* at ¶ 21.

- "When McCoy came on the scene, [AT&T's] fair treatment of the station stopped. [AT&T's] approach to Circle City reflected its bias against the race of Circle City's owner, McCoy." *Id.* at ¶ 24.

Second, Defendants argue that the remaining, non-conclusory allegations fail to plead that

Circle City's status as a minority-owned business was the "but-for" cause of Defendants not

negotiating a retransmission agreement with the Circle City. (Filing No. 56 at 12.)  Specifically,

Defendants argue that Circle City admits "AT&T had facially 'benign and business related' reasons

for its decision not to pay Circle City its requested retransmission fees: AT&T would not pay

Circle City 'license fees for standalone non-Big 4 broadcast stations' like WISH and WNDY." *Id.*

Though Plaintiffs allege in their Amended Complaint that Defendants' alleged reasoning is untrue,

Defendants ask the Court to disregard this allegation as "not plausible and [] conclusory." *Id.* at

13.  Defendants assert that their response said nothing requiring that the Big 4 stations be "in the

Indianapolis market" and then, by citing previous decisions by the Federal Communications

Commission involving Nexstar, ask the Court to "draw on its judicial experience and common sense" to disregard Circle City's allegation. *Id.* at 13-14.

In response, Plaintiffs argue that their allegations are not legal conclusions, but factual assertions that both state a claim for racial discrimination and would withstand scrutiny under *Iqbal*. (Filing No. 62 at 6.) (quoting Black's Law Dictionary 669 (9th ed. 2009)). As these factual allegations are required to be accepted as true when deciding a Rule 12(b)(6) motion to dismiss, Plaintiffs contend that the factual allegations in the Amended Complaint "advance the claim that had Circle City's owner been white and everything else remained the same, AT&T would have agreed to terms with Circle City." *Id.* at 9. Specifically, Plaintiffs allege that the Amended Complaint includes the following "but-for" factual allegations:

> After the sale, Circle City, the new minority owner of these two stations, improved the content and quality—and therefore the value—of the stations but AT&T rebuffed it and offered nothing. If the content of the stations remained the same or improved and the race of the owner changed from white to Black, it is plausible to conclude that the race of the owner was the but-for cause of AT&T's refusal to negotiate a fair deal with Circle City.

*Id.*

Additionally, in response to Defendants' request that the Court "draw on its judicial experience and common sense" to accept their stated explanation for refusing to contract with Circle City, Plaintiffs argue the Defendants are asking the Court to go outside the pleadings. *Id.* at 14. Plaintiffs allege the following:

> Without seeing AT&T's agreements with Nexstar . . . there is simply no way to determine whether Nexstar's alleged national portfolio factored into AT&T's treatment of these stations, let alone whether it served as a sufficient non-discriminatory justification for its disparate treatment of Circle City as a matter of law."

*Id.*

8

Plaintiffs further conclude that "[t]he pleading stage is neither the time nor the place to litigate the believability of that justification, and AT&T's effort to assert a defense on the merits at this stage of the litigation is wholly improper." *Id.* at 15.

In reply, Defendants maintain that Plaintiffs have failed to state a claim under Section 1981 as the Amended Complaint "sets forth a lawful, plausible explanation for AT&T's refusal to pay Circle City its requested retransmission consent rates." (Filing No. 71 at 9.)   According to Defendants, by referencing and attaching the email asking for AT&T's alleged reasoning for not contracting with Circle City, the Plaintiffs have "admitted that AT&T had a facially race-neutral, benign business-related explanation for its decision not to pay Circle City its requested retransmission fees." *Id.* at 11.   As Defendants contend, when this pleading is paired with the Court "draw[ing] on its judicial experience and common sense" to reject Circle City's conclusory allegation that AT&T's benign business-related explanation was "a lie," Plaintiffs have failed to state a plausible Section 1981 claim. *Id.* at 11-12.

As Defendants acknowledge in their reply brief, this Court recently denied a similar motion to dismiss brought on almost identical grounds. *See Circle City Broadcasting I, LLC, et al., v. DISH Network LLC*, No. 1:20-cv-00750-TWP-TAB at Filing No. 55 (S.D. Ind. Mar. 31, 2021). And while Defendants argue that Plaintiffs' inclusion of their business-related explanation in the Amended Complaint makes this case different, the Court disagrees.   Applying the but-for causation standard to Plaintiff's complaint, the Court agrees that Plaintiffs have pled enough factual information to present, at the very least, a circumstantial case for intentional discrimination. *See, e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010).

At the motion to dismiss stage, the Court must accept as true all of Plaintiffs' allegations. Defendants attempt to circumvent this standard by asking the Court to disregard Plaintiffs'

allegation that the "benign, business related explanation" is a lie by using its "judicial experience and common sense." But Defendants are asking much more of this Court. Defendants' request would require this Court to move beyond the pleading stage and begin deciding the veracity of Defendants' defense to Plaintiffs' claims. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). At this stage, Plaintiffs have sufficiently pleaded their Section 1981 claim; thus, the motion to dismiss this claim is **denied**.

### 2.   **Defamation Claim**

Plaintiffs also allege in their Amended Complaint that "AT&T . . . publicly communicated defamatory statements about McCoy and Circle City." (Filing No. 49 at ¶ 47.)[1] "Defamation is 'that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff.'" *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 955 (Ind. Ct. App. 2014) (citing *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), trans. denied). Under Indiana law, "[t]o maintain an action for . . .defamation the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). "Any statement actionable for defamation must not only be defamatory in nature, but false. The determination of whether a communication is defamatory is a question of law." *Id.* (citing *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006)).

---

[1] In particular, "[i]n public statements disseminated to media outlets requesting comment on the Section 1981 case, Mask stated that the case is a "negotiating tactic" which Circle City utilized "only after we [AT&T] declined its demands for compensation above and beyond what similar independent stations receive." (Filing No. 49 at 8, ¶29)..

Defendants argue the Plaintiffs have failed to state a claim for defamation for four reasons. The Court will address each argument individually.

### a. AT&T's statement was a matter of opinion.

Defendants first argue that AT&T's statement was a matter of opinion, not a verifiable statement of fact. "Opinions . . . are sometimes determined to be outside the reach of a defamation claim. An opinion is not actionable if it does not contain any provably false factual assertions." *Piersen v. Nat'l Inst. for Lab. Rels. Rsch.*, 319 F. Supp. 3d 1100, 1109 (N.D. Ind. 2018) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, n.7 (1990); *see also Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (holding that the statement "[plaintiff] is a very poor lawyer" was unactionable because it did not convey a verifiable falsehood like the statement "[plaintiff] lost every case he has tried" would have). Defendants contend that "AT&T's description of the Section 1981 Claim as a baseless 'negotiating tactic' is a constitutionally protected opinion that reflects AT&T's subjective characterization of the parties' dealings." (Filing No. 56 at 16.) Defendants assert that both federal and state courts have "repeatedly held that characterizations of a party's negotiating position or bargaining strategy are constitutionally protected opinion because they do not express objectively verifiable facts." *Id.* (citing *United Consumers Club, Inc. v. Bledsoe*, 441 F. Supp. 2d 967, 980 (N.D. Ind. 2006), *amended on other grounds*, 2006 WL 2361818 (N.D. Ind. Aug. 4, 2006)).

In response, Plaintiffs contend that if they are successful in proving their Section 1981 claim—that Defendants intentionally discriminated against them—then Defendants' statement constitutes a false statement of fact. (Filing No. 62 at 20.) Plaintiffs contend that "[t]hese statements are not merely an expression of an opinion, but rather are knowingly false statements made to conceal AT&T's racial animus." *Id.* (citing *Mourning v. Allison Transmission, Inc.*, 72

N.E.3d 482, 489 (Ind. Ct. App. 2017)).  Additionally, Plaintiffs contend that if "AT&T knowingly lied about its intentional discrimination to defame McCoy and Circle City" the public interest over the discrimination lawsuit does not protect Defendants' speech as a constitutionally protected opinion.  *Id.* at 21.  According to Plaintiffs, "while the resolution of the discrimination lawsuit may be an issue of public interest in one sense, AT&T has no right to defame the Plaintiffs simply because the dispute is a public one."  *Id.* (citing *Kadambi v. Express Scripts, Inc.*, 86 F. Supp. 3d 900, 909 (N.D. Ind. 2015)).

In reply, Defendants argue that their "description of Circle City's Section 1981 lawsuit as a 'negotiating tactic' is classic constitutionally protected opinion because it reflects AT&T's perception or beliefs regarding the lawsuit and its subjective assessment of Circle City's subjective 'attitudes' and 'beliefs' in filing the lawsuit." (Filing No. 71 at 3-4.)  Defendants contend that there is no way to objectively verify or test the truth or falsity of their characterization of the lawsuit except through testimony that is "intrinsically and necessarily *subjective."  Id.* (citing *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 981 (N.D. Ind. 2007) (emphasis in original)).  According to Defendants, "[w]hether or not Circle City prevails on the merits of its claims of intentional racial discrimination, resolution of the Section 1981 claim will verify nothing about what Circle City's motive was in filing the lawsuit."  *Id.*

The Court agrees that AT&T's statement was a subjective opinion and does not contain objectively verifiable facts.  Even if Plaintiffs were ultimately successful in proving their Section 1981 claim, attempting to prove whether AT&T's description of this lawsuit as a "negotiating tactic" was defamation would require speculative and subjective testimony of the parties involved.  Describing something as a "negotiating tactic", on its face, carries with it neither a positive nor a negative connotation.  And even if Plaintiffs have a valid claim for filing their lawsuit, the purpose

12

behind filing it could still include, among other things, a "negotiating tactic" aimed at getting AT&T to negotiate an agreement.  Thus, Plaintiffs have failed to state a claim for defamation.

### b.   AT&T's statement was not made with actual malice.

Defendants next argue that AT&T's statement was made concerning a matter of public concern and not made with actual malice.  Defendants assert that when defamatory speech concerns "matters of public or general concern," Indiana law requires Plaintiffs to prove that Defendants acted with actual malice. (Filing No. 56 at 17) (citing *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 452 (Ind. 1999)).  Defendants contend that the negotiation of retransmission agreements and Plaintiffs' Section 1981 claim are matters of public interest.  *Id.* at 18-19.  However, Defendants argue that Plaintiffs have failed to plead actual malice for two reasons:  AT&T's statement was not a statement of verifiable fact capable of being proven true or false and, second, Plaintiffs have "pleaded no facts stating a plausible claim that AT&T issued its statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.* at 20 (quoting *Bandido's, Inc.*, 712 N.E.2d at 456).

In response, Plaintiffs argue that their defamation claim must be viewed in conjunction with their Section 1981 claim.  (Filing No. 62 at 19.)  According to Plaintiffs, if the Defendants did intentionally discriminate against Plaintiffs, then "AT&T's statements blaming McCoy and Circle City for the impasse and its statement calling the lawsuit a negotiating tactic were knowingly false".  *Id.* Plaintiffs argue that this is the required mental state for the malice element of a defamation claim.  *Id.*  Plaintiffs argue that "once Circle City proves that AT&T acted with the intent to discriminate based on race, Circle City will have also proved that AT&T necessarily knew that the public statements it made concerning Circle City's 'negotiating tactics' were knowingly false."  *Id.*

In reply, Defendants argue that AT&T's statement cannot be determined as false because it does not convey objectively verifiable facts. (Filing No. 71 at 5.) Additionally, Defendants contend that "Plaintiffs were required to plead facts in the First Amended Complaint that plausibly show Ms. Mask acted with actual malice at the time she provided the statement to Circle City's television station." *Id.* at 6. According to Defendants, even if Circle City proves that AT&T's deal team discriminated against Circle City in negotiation of the retransmission consent agreement, it does not establish "that discriminatory animus (and knowledge of it) can be imputed to Ms. Mask retroactively to the time she made the statement." *Id.* (citing *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865 (7th Cir. 2018)).

As stated above, the Court has found that the statement made by AT&T does not contain verifiable facts. As AT&T's statement was one of subjective opinion, it can be neither false nor made with reckless disregard as to whether it was false or not. Therefore, Plaintiffs have failed to plead actual malice.

### c.   <u>Plaintiffs failed to plead special damages.</u>

Defendants also argue the Plaintiffs failed to include special damages in their Amended Complaint. "A defamatory communication is said to either be 'defamatory *per se*' or 'defamatory *per quod*'. A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Kelley*, 865 N.E.2d at 596. "In addition, the defamatory nature of the communication must appear without resort to extrinsic facts or circumstances." *Miller*, 11 N.E.3d at 956. "All other defamatory communications are defamatory *per quod*." *Kelley*, 865 N.E.2d at 596. According to Defendants, Plaintiffs' claim does not fall within one of the narrow categories of *per se* defamation. (Filing No. 56 at 22.)

As a claim for defamation *per quod*, Defendants argue that Plaintiffs' claim fails because they did not properly plead special damages. *Id.* at 24. "Actions for *per se* and *per quod* defamation are susceptible to different requirements with regard to the showing of damages." *Id.* at 597. "Damages . . . may be presumed in an action for defamation *per se* as a natural and probable consequence of the per se defamation." *Miller*, 11 N.E.3d at 956 (internal quotations omitted). But the plaintiff must plead special damages in an action for defamation *per quod*. *Kelley*, 865 N.E.2d at 597. Defendants contend that Plaintiffs only included conclusory allegations of "general reputational damage and special economic damages," which fails to meet the requirements of Federal Rule of Civil Procedure 9(g).

In response, Plaintiffs argue that they have alleged they suffered general reputational damages as well as special economic damages resulting from the defamation. (Filing No. 62 at 20.) According to Plaintiffs, "AT&T's defamatory statements attacking McCoy and Circle City undermine the investment they made to improve the stations and curry favor in the Indianapolis market, dissipating otherwise reasonable expectations of their return on investment." *Id.* Plaintiffs contend that these allegations are sufficient to plead a claim of defamation *per quod*.

Defendants reply that Plaintiffs have not sufficiently pleaded special damages. According to Defendants, "general allegations of reputational harm are not enough, absent *specific* allegations of pecuniary damage 'incurred as a natural and proximate consequence' of the 'alleged defamatory statements.'" (Filing No. 71 at 7 (emphasis in original).) Additionally, Plaintiffs failed to address their pleading deficiencies under Federal Rule of Civil Procedure 9(g) which requires that special damages be specifically stated. *Id.* at 8.

"Pleading damages from defamation *per quod* is subject to a heightened standard for Rule 9(g), and requires something akin to an itemized list of specifically stated damages." *Small v. The*

*Anchorage Homeowners Ass'n, LLC*, No. 1:18-cv-1605-TAB-SEB, 2019 WL 1317637, at *11 (S.D. Ind. Mar. 21, 2019) (citing *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003)); *see also Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("[The plaintiff] itemized losses that in view flowed from defendants' statements; he identified specific business opportunities that had been available to him earlier but that, following the defendants' statements, were available no more. This is more than a general allegation of economic loss; it is an allegation that third parties have ceased to do business with him because of the defendants' action."). Plaintiffs' Amended Complaint merely alleges "general reputational damage and special economic damages." ([Filing No. 49 at ¶ 48](#).) Without additional detail about what pecuniary damages Plaintiffs actually experienced and how they were caused by the defamation, Plaintiffs have failed to plead special damages.

### d.   <u>AT&T's statement does not mention McCoy.</u>

Finally, Defendants argue that AT&T's statement did not specifically mention McCoy and, thus, should be dismissed. ([Filing No. 56 at 26](#).) Defendants assert that AT&T's statement refers only to Circle City and not to McCoy specifically. *Id.* As Circle City and McCoy are two separate and legally distinct parties, Defendants contend that AT&T's statement regarding Circle City cannot be interpreted to extend to McCoy as an individual. *Id.*

In response, Plaintiffs argue that AT&T's statement directly referenced McCoy. ([Filing No. 62 at 18-19](#).) AT&T's statement included the following: "[W]e have recently completed more extensive agreements with other minority-owned broadcasters including one who recently paid Circle City's owner $165 million to acquire his former stations." *Id.* at 19. Plaintiffs argue that this portion of the statement directly referenced Circle City's owner, McCoy, and "omitted any reference to the fact that the other referenced minority broadcaster previously settled a substantial

race discrimination claim with AT&T." *Id.* According to Plaintiffs, both in their response and Amended Complaint, "AT&T['s] . . . statement . . .sought to pull down McCoy and Circle City by tarnishing their reputations in the community while elevating its own profile . . . ." *Id.*

In reply, Defendants argue that "Plaintiffs cite no authority for their claim that their *pleading* [of] a 'connection between McCoy and Circle City' suffices to connect AT&T's *statement* to McCoy." (Filing No. 71 at 8.) Additionally, Defendants argue that even if their statement references McCoy, Plaintiffs have not alleged that the portion of the statement that refers to McCoy is defamatory.

The Court agrees with Defendants. AT&T's alleged statement does not specifically mention McCoy and that portion which mentions "Circle City's owner" contains no allegedly false or defamatory language. Thus, Plaintiffs have failed to state a defamation claim as it relates to McCoy.

In sum, Plaintiffs have failed to plead a claim for defamation. Defendants' motion to dismiss Plaintiffs' defamation claim is **granted**.

**C.      Defendants' Anti-SLAPP Motion to Dismiss**

In addition to filing a Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants also filed a second motion to dismiss Plaintiffs' defamation claim under Indiana's anti-SLAPP statute. Indiana Code section 34-7-7-9 instructs that if an anti-SLAPP motion to dismiss is filed, a court "shall . . . [t]reat the motion as a motion for summary judgment."

"Indiana adopted its anti-SLAPP statute in 1998 to address and reduce abusive SLAPP litigation." *Gresk for Estate of VanWinkle v. Demetris*, 96 N.E.3d 564,568 (Ind. Ct. App. 2017). The anti-SLAPP statute "is intended to reduce the number of lawsuits brought primarily to chill

the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Brandom v. Coupled Prod.,* LLC, 975 N.E.2d 382, 385 (Ind. Ct. App. 2012).  When faced with an anti-SLAPP motion to dismiss, the court must determine (1) whether an action was "in furtherance of the person's right of petition or free speech"; and (2) if so, whether the action was "in connection with a public issue."  Ind. Code § 34-7-7-5(1).  If both requirements are satisfied, the court then analyzes (3) whether the action was "taken in good faith and with a reasonable basis in law and fact."  *Id.*, § 34-7-7-5(2).

The anti-SLAPP statute further states that "the person who files a motion to dismiss must state with specificity the public issue . . . that prompted the act in furtherance of the person's right of . . . free speech under the Constitution of the United States or the Constitution of the State of Indiana." Ind. Code § 34-7-7-9(b).  The statue also requires that the court base its decision on "facts contained in the pleadings and affidavits filed and discovered under the expedited proceeding." *Id.*, § 34-7-7-9(c).  A court shall grant an anti-SLAPP motion to dismiss if the party filing the motion to dismiss "has proven, by a preponderance of the evidence, that the act upon which the claim is based is a lawful act in furtherance of the person's right of . . . free speech under the Constitution of the United States or the Constitution of the State of Indiana."  *Id.*, § 34-7-7-9(d).

AT&T argues that it "is entitled to judgment under Indiana's anti-SLAPP statute, Ind. Code § 34-7-7-5, -9, because AT&T's speech was in furtherance of its First Amendment rights on an issue of public concern, and AT&T acted in good faith and with a reasonable basis in law and fact. Plaintiffs' First Amended Complaint should be dismissed with prejudice, and AT&T should be awarded its attorneys' fees and costs." (Filing No. 57 at 1).  After reviewing the arguments of both parties, the Court finds that the anti-SLAPP statute does not apply to Plaintiffs' defamation

claims because Defendants have not adequately demonstrated that Plaintiffs' defamation allegations constitute matters of public interest.

While Defendants note that at least one court applying Indiana law has recognized that "control of a television broadcasting channel" is a matter of public interest, *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 974 (N.D. Ind. 2007), Defendants' statement was not related to control of a broadcasting company but was their "public response to the lawsuit" filed by Plaintiffs. (Filing No. 49-3.) And while the availability and access of television programming may be an issue of public concern, a lawsuit between two companies is not. *See Britt Interactive LLC v. A3 Media LLC*, No. 1:16-cv-2884-TWP-DML, 2017 WL 2118513, at *7 (S.D. Ind. May 16, 2017) ("While the Magazines may be of general interest to members of their respective communities, statements and lawsuits relating to the ownership of the Magazines and the intellectual property associated with the Magazines are not matters of public interest."). In examining the "content, form, and context" of Defendants' statement, it was not made on "a matter of political, social, or other concern to the community" and does not implicate the protected activity contemplated by Indiana's anti-SLAPP statute. *Gresk*, 96 N.E.3d at 571. Defendants' motion is **denied,** and the Court does not award attorneys' fees and costs to Defendants.

## IV.   CONCLUSION

For the reasons stated above, Defendants AT&T Services, Inc.'s and DIRECTV, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Filing No. 55), is **GRANTED IN PART and DENIED IN PART.** Dismissal is **granted** as to Count II of the Amended Complaint and Count II is **dismissed**. Dismissal is **denied** as to Count I of the Amended Complaint and Count I shall proceed. Defendants' Motion to Dismiss pursuant to Indiana's anti-SLAPP statute, (Filing No. 57), is **DENIED,** and no attorneys' fees and costs are awarded.

Moreover, Plaintiffs Circle City Broadcasting and Dujuan McCoy's Motion for Leave to File

Surreply in Opposition to Defendants' Motion to Dismiss (Filing No. 73), is **DENIED**.

       **SO ORDERED.**

Date:  12/29/2021

                                    Hon. Tanya Walton Pratt, Chief Judge
                                    United States District Court
                                    Southern District of Indiana

DISTRIBUTION:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
ghahn@boselaw.com

John Bruster Loyd
JONES GILLASPIA LOYD LLP
bruse@jgl-law.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
mwohlford@boselaw.com

Daniel K. Burke
DKB LEGAL LLC
dan@dkblegal.com

Ellen E. Boshkoff
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ellen.boshkoff@faegredrinker.com

Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
emily.kilemaxwell@faegredrinker.com

Ryan Michael Hurley
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ryan.hurley@Faegredrinker.com