# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC, and DUJUAN MCCOY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 1:20-cv-02108-TWP-TAB |
| AT&T SERVICES, INC., and DIRECTV, LLC, | ) ) ) |
| Defendants. | ) |

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants AT&T Services, Inc. and DIRECTV, LLC (collectively, "DIRECTV") (Filing No. 126). Plaintiffs Circle City Broadcasting I, LLC ("Circle City") and Dujuan McCoy ("McCoy") initiated this lawsuit alleging that DIRECTV engaged in race discrimination in contracting and made false and defamatory statements by characterizing Plaintiffs' race discrimination claim as a "negotiating tactic." (Filing No. 49.) Following dismissal of the Count II (violation of Indiana's anti-SLAPP statute), the only claim remaining before the Court is Circle City's Section 1981 race discrimination claim.[1] (Filing No. 122.) For the reasons discussed below DIRECTV's Motion for Summary Judgment must be **granted**.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Circle City as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, Circle City is given the benefit of any conflicts

---

[1] Because McCoy was only a party to the dismissed defamation claim, he is no longer a party in this case.

in the evidence and reasonable inferences from the evidence, but without vouching for the objective truth of any fact or expressing any opinion on the weight of the evidence. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

Circle City is a local, minority-owned television broadcasting company in Indianapolis, Indiana that currently owns two television stations: WISH-TV (Channel 8) and WNDY (Channel 23). (Filing No. 153-11.) McCoy, a Black male, is Circle City's President and CEO. *Id.* On September 19, 2019, Circle City purchased these two stations from Nexstar Broadcasting, Inc. ("Nexstar"). *Id.* Circle City's acquisition made no difference in station content or accessibility. (153-11 at 2.) Nexstar is a large broadcasting company that, at the time it was negotiating with Circle City, owned more than 100 "Big 4" stations[2] and approximately 30 "non-Big 4" stations. (Filing No. 128-3 at 8.)

Prior to Circle City's purchase, Nexstar had a contract with DIRECTV whereby DIRECTV paid retransmission consent fee payments on a per-subscriber, per-month basis for each station. (Filing No. 128-4 at 6.) This contract, however, was negotiated on behalf of all Nexstar's stations, not just WISH-TV and WNDY. *Id.* at 9-10. During Circle City's negotiations with Nexstar, Nexstar was also renegotiating with DIRECTV to update their existing agreement that would be expiring. *Id.* While deciding on the specific terms, DIRECTV raised a concern regarding whether retransmission fees would be payable for non-Big 4 stations, like WISH-TV and WNDY, if they were sold to other companies. (Filing No. 128-3 at 9.) In response, Nexstar proposed a provision to specifically preclude assignment of the agreement to Circle City if it sold WISH-TV and

---

[2] The "Big 4" is an industry term that refers to the four major network stations in the U.S.--ABC, CBS, FOX, and NBC. WISH-TV and WNDY were two of Nexstar's non-Big 4 stations. (Filing No. 128-3 at 4.)

WNDY, which DIRECTV agreed to. *Id.* Because of this term, on the date the stations were purchased by Circle City, DIRECTV stopped retransmission payments. *Id.*

After the purchase, Circle City and DIRECTV began negotiating a new retransmission consent agreement. ([Filing No. 128-6 at 7](#).) Circle City was represented by McCoy, with the assistance of his counsel Dan Kirkpatrick, and DIRECTV was represented by Julia Dai. ([Filing No. 128-4 at 4](#).) Kirkpatrick and Dai had previously negotiated a retransmission consent agreement between DIRECTV and Bayou City Broadcasting, LLC ("Bayou City"), a broadcasting company located in Evansville, Indiana and previously owned by McCoy, in 2017. (Filing No. 28-6 at 3; [Filing No. 128-9 at 4](#).) Bayou City was part owner of four Big 4 stations: two in Evansville, Indiana and two in Lafayette, Louisiana—(together, "Bayou City Stations") ([Filing No. 128-2 at 153](#)). DIRECTV agreed to pay Bayou City retransmission consent fees to carry its Big 4 stations. ([Filing No. 128-6 at 4](#); [Filing No. 128-2 at 139-41](#).) That agreement explicitly provided, however, that if Bayou City did not maintain its Big 4 affiliations there would be no obligation to pay such fees. (Dkt. 128-1 at 9.)

DIRECTV's first offer to Circle City was a no-fee arrangement, which DIRECTV represents is its typical practice when negotiating with "Standalone, non-Big 4 Stations." ([Filing No. 128-2 at 37-43](#).) DIRECTV has made similar, no-fee arrangements with other stations that do not own any "Big 4" stations. ([Filing No. 127-1 at 47](#); [Filing No. 128-6 at 4](#); [Filing No. 128-9 at 7](#).) Circle City declined the offer. (Filing 128-1 at 17.) While negotiations between the parties continued during fall 2019, DIRECTV maintained its position that it would not pay license fees for Circle City's standalone, non-Big 4 stations. ([Filing No. 128-2](#).) In January 2020--fourteen weeks after Circle City's October 22, 2019 proposal--Dai sent a written response to Circle City, stating "[o]ur policy is not to pay license fees for standalone non-Big 4 affiliated stations." ([Filing

3

No. 153-3 at 16; Filing No. 128-2 at 98.) January 2020 was the first time that McCoy learned of this policy. (Filing No. 128-1 at 23.)³ On January 31, 2020, McCoy declared that the parties would not be able to reach an agreement. *Id.* at 24.

In June 2020, McCoy contacted AT&T's then CEO, Randall Stephenson, stating that if Stephenson could not help, he would "continue fighting for equal treatment and ask the courts to help . . . . " (Filing No. 127-1 at 36.) DIRECTV's Chief Content Officer, Robert Thun, responded to McCoy and reiterated DIRECTV's policy of not paying license fees for standalone, non-Big 4 stations. (Filing No. 128-2 at 125.) McCoy responded by stating that Nexstar had been compensated for these two stations when they owned them. *Id.* at 128-29. In response, Dai emailed McCoy explaining that WISH and WNDY became standalone, non-Big 4 stations after Circle City purchased them because Circle City did not "own any Big 4-affiliated stations." *Id.* McCoy did not respond to the email, but Kirkpatrick did contact Dai. (Filing No. 128-8 at 14-15.) During their discussion, Kirkpatrick acknowledged that, based on his prior experience negotiating with DIRECTV for other clients, DIRECTV had consistently not offered retransmissions fees to non-Big 4 station owners. (Filing No. 128-2 at 168.) Kirkpatrick also informed DIRECTV that there was no possibility of reaching an agreement if DIRECTV was unwilling to offer any fees to Circle City. *Id.*

On August 10, 2020, Circle City filed a Complaint alleging that DIRECTV discriminated against Circle City based on its status as a minority-owned business in violation of 42 U.S.C. § 1981. (Filing No. 1.) After the close of discovery, DIRECTV filed their pending Motion for Summary Judgment. (Filing No. 126.)

---

³ DIRECTV contends that it shared this policy multiple times to Circle City. Because all facts are considered in the light most favorable to Circle City as the non-moving party, the Court credits its contention that Circle City did not learn of this policy until January 2020..

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

The basis of Circle City's lawsuit in this action is that after Circle City—a Black owned business—bought WISH and WNDY from Nexstar, DIRECTV refused to continue to pay substantial fees for the right to carry WISH and WNDY pursuant to a retransmission consent agreement. After the closing, "DIRECTV offered zero dollars to Circle City where, just the day before, DIRECTV had paid Nexstar handsomely. The only thing that changed overnight was the stations' owner—from a non-Black-owned company to a Black-owned one. Circle City's suit under 42 U.S.C. § 1981 for race discrimination in contracting followed." ([Filing No. 154 at 2](#).)

Section 1981 provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Circle City's remaining claim in this case is that DIRECTV violated Section 1981 by racially discriminating against it while negotiating for retransmission fees for WISH-TV and WNDY. To make a *prima facie* claim of race discrimination, a plaintiff must show (1) it is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir 1996)).

In this case, the parties do not dispute Circle City's status as a racial minority nor that the alleged discrimination was related to the making of a contract. Thus, the element at issue before

the Court is whether a question of material fact exists regarding whether DIRECTV had the intent to discriminate against Circle City based on its race.

In the Seventh Circuit, courts "generally apply the same standards to Title VII and Section 1981 race discrimination claims at the summary judgment stage." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). When evaluating a race discrimination claim, a district court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused" the adverse action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Id.* While the plaintiff may cite to direct or circumstantial evidence of discrimination to show causation, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dept' of Cmty, Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Specifically, for a Section 1981 claim, "a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp.*, 140 S. Ct. at 1014.

DIRECTV argues that Circle City cannot meet this burden as there is no evidence that it treated Circle City any differently than any other similarly situated station owner. (Filing No. 129 at 16.) DIRECTV contends that its company has a policy of not paying retransmission consent fees to standalone, non-Big 4 stations as "it does not believe those stations generate sufficient economic value to justify paying fees." *Id.* at 16-17.

In response, Circle City does not directly challenge DIRECTV's stated policy, but instead argues that a jury could reasonably reject DIRECTV's alleged policy as pretexual

> …given DIRECTV's past highly favorable treatment of WISH, DIRECTV's deviation from its standard change-of-control language, the 2019 DIRECTV-Nexstar agreement's targeting of Circle City, Julia Dai's negotiation summaries which specifically contemplated the possibility of continued payments for the

>Circle City stations . . . , and DIRECTV's contemptuous treatment of McCoy throughout their negotiations.

(Filing No. 154 at 25.)  To establish pretext, a plaintiff must show more than just faulty reasoning or mistaken judgment; a plaintiff must demonstrate that the defendant's proffered reason for the alleged discrimination was a "lie, specifically a phony reason for some action." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389-90 (7th Cir. 2020).

In alleging pretext, Circle City first argues that DIRECTV recognized WISH as special and deserving higher rates when it contracted with Media General and Nexstar. (Filing No. 154 at 26.) This special status, along with other competing definitions of "Standalone non-Big 4 Stations," make DIRECTV's stated reasons "suspect and driven by impermissible race-based motives." *Id.* at 27.  But this argument attempts to make logical leaps that are unsupported by the record.  While Circle City appears to make no attempt to rely on the framework for "organizing, presenting and assessing circumstantial evidence" established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), it summarily concludes that "similarly situated station owners are the ones who owned WISH and got paid." *Id.* at 28.  But merely being previous owners of WISH is not enough to establish that Circle City is similarly situated to Nexstar or Media General, both of whom where larger companies and owned more stations than Circle City.  Circle City makes no compelling argument that these companies are similarly situated, nor does it address the issue of bargaining power that the alleged comparison companies had when negotiating with DIRECTV. Without showing that the companies are similarly situated, Circle City has not established that race was the "but for" cause of the differences in what DIRECTV offered.

Likewise, the Court agrees with DIRECTV and is confused by Circle City's reliance on the testimony of a non-party's understanding of the term "Standalone non-Big 4 Stations" to establish pretext. (Filing No. 186 at 8.) In challenging the notion that DIRECTV did not pay for non-Big 4

stations and to show pretext, McCoy relied on deposition testimony of Brian Brady ("Brady"), who owned Big 4 and non-Big 4 stations around the country. Brady understands the "standalone" definition to be market-specific—a "standalone non-Big 4 station" means "you do not have a Big Four attached to a MyNet or CW in a market – in a television market." (Filing No. 152-4 at 2.)[4] But when it comes to establishing pretext, the area of focus is on what DIRECTV believed and practiced, not Brady's understanding of the term. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001) ("On the issue of pretext, our only concern is the honesty of the [the party's] explanation . . . . And there is no indication in the record that [the party] did not honestly believe [its actions were correct].") (citation and internal quotations omitted). Brady was not an employee, agent, or representative of DIRECTV and was not part of the negotiations at the center of this case. His understanding of the term does not matter nor does it produce any alleged, race-based motive to the policy DIRECTV alleges it relies on with negotiating with "Standalone non-Big 4 Stations."

Next, Circle City alleges that pretext can be established because the 2019 agreement between DIRECTV and Nexstar "departed from standard contract language" and included a provision that specifically prevented Circle City from receiving the same transmission fees as Nexstar. (Filing No. 154 at 29.) Circle City concludes that this provides for a negative inference because DIRECTV was aware that Circle City was a black-owned business and because DIRECTV could not identify another retransmission consent agreement specifically excluding a station group by name. This conclusion, however, is again unsupported by the record. The designated evidence is that Nexstar proposed precluding Circle City from assignment of the

---

[4] Brady also has an opinion of DIRECTV's reputation for untruthfulness—he opined that DIRECTV personnel, including Burakoff, "have a habit – I mean, they just lie. When you call them out on it, they just – They know they are lying but they do it anyways." (Filing No. 153-8 at 4).

retransmission agreement, not DIRECTV.  (Filing No. 128-3 at 9.)  And Circle City does not appear to refute this fact in its briefing.  (Filing No. 154 at 30.)  DIRECTV's acceptance of this term does not support pretext.

Finally, Circle City argues that DIRECTV's treatment of both Circle City and McCoy could lead to an "inference of discrimination." *Id.* at 32.  This alleged mistreatment included five actions: (1) DIRECTV's requests for several no-fee carriage extensions; (2) not informing McCoy of its policy of not paying "Standalone non-Big 4 stations"; (3) revising deal summaries to eliminate references to offering Circle City retransmission fees; and (4) refusing to meet with McCoy in person and referring to him as "aggressive" and "not easy to negotiate with."  *Id.* at 31. And perhaps most troubling, (5) Circle City alleged in the Amended Complaint that DIRECTV has stated (in reference to Circle City and McCoy) that it does not want to "open the floodgates to start paying people like this," (Filing No. 49 at 3 (¶7), 6 (¶19), 9 (¶32)) and that DIRECTV "maintain[s] an internal playbook designed to suppress minority-based content." (Filing No. 128-1 at 31, 32.) But the designated evidence concerning these stated reasons, both individually and considered as a whole, do not establish pretext.

The Seventh Circuit has "set a high evidentiary bar for pretext." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 894 (7th Cir. 2016).  To demonstrate pretext, a plaintiff can present evidence showing that (1) the defendant was "more likely than not motivated by a discriminatory reason" or (2) the defendant's stated reason is not credible. *Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)).  When considering pretext at the summary judgment stage, "the only question before [the Court] is whether the plaintiff has provided evidence from which a rational trier of fact could infer the . . . stated reasons for taking the adverse action were lies." *Id.* at 683.

While Circle City did not like how DIRECTV chose to negotiate with it, nothing in the record connects any of these actions to some form of racial animus or intent to discriminate based on race. "In determining whether [a party's] reason can be characterized as pretextual, [the Court] do[es] not evaluate whether the [party's] proffered justification was accurate or even whether it was unfair. [The Court's] sole focus is on whether the [party's] stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020). There is no evidence that DIRECTV's stated policy of not paying fees to "standalone non-Big 4" station owners was false.

As to the "floodgates" and "people like this," remarks, McCoy testified that this allegation is based on a conversation between Ed Gillespie, AT&T's Senior Executive Vice President for External and Legislative Affairs, and Bill Smith, a lobbyist that McCoy retained to help him resolve the dispute with DIRECTV. (Dkt. 128-1 at 21.) Neither Gillespie nor Smith recall Gillespie using the term "floodgates" and no witness (even McCoy) testified about a "people like this" remark. (Filing No. 128-1 at 21; Filing No. 128-10 at 3-4; Filing No. 127-4 at 6 ). Moreover, both Gillespie and Smith agree that during their conversation, Gillespie explained that "race had nothing to do with [DIRECTV's] business decision," which was solely based on "non-Big 4 status." (Filing No. 128-10 at 3.) As to the "playbook," statement, McCoy testified that this allegation was based on a conversation between Dan York, DIRECTV's former President of Content, and Brady, (Filing No. 128-1 at 31-32). But neither York nor Brady recall the "playbook" conversation occurring at all. (Filing No. 128-5 at 3; Filing No. 127-5 at 3.) Most compelling is McCoy's testimony that in actual negotiations between DIRECTV and Circle City, DIRECTV *did not* make any statements that suggested that race was a factor in its decision not to offer retransmission consent fees. (Filing No. 128-1 at 4, 33.) Moreover, it appears that Circle City has

11

abandoned this argument as it is absent from its response brief. Had Circle City designated evidence in support of this allegation, the evidence could have been sufficient from which a reasonable jury could conclude that race was a factor. But without any evidence—direct or circumstantial—to support a reasonable inference of discriminatory motive, a jury could not find that DIRECTV's contracting decision was based on Circle City being a black owned business.

Because Circle City has not established a *prima facie* case for race discrimination, not presented evidence that DIRECTV's reasons for failing to offer retransmission fees to Circle City were pretextual, DIRECTV's Motion for Summary Judgment is **granted**.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants AT&T Services, Inc.'s and DIRECTV, LLC's Motion for Summary Judgment ([Filing No. 126](#)). Plaintiff Circle City Broadcasting I, LLC's claims are **dismissed** on summary judgment. All pending motions are **denied as moot**.

Final judgment will issue under separate order.

    SO ORDERED.

Date:    3/31/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Cyrus Mehri
MEHRI & SKALET, PLLC
cmehri@findjustice.com

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
ghahn@boselaw.com

John Bruster Loyd
JONES GILLASPIA LOYD LLP
bruse@jgl-law.com

Joshua Karsh
MEHRI & SKALET, PLLC
jkarsh@findjustice.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
mwohlford@boselaw.com

Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
emily.kilemaxwell@faegredrinker.com

Ryan Michael Hurley
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ryan.hurley@Faegredrinker.com